UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JUAN JOSE GARCIA,

        Plaintiff,                       Case No. 1:23-cv-1085

v.                                        Honorable Jane M. Beckering

SPENCER OLSON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court initially referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program. The case was not resolved through the early mediation program (ECF No. 9).

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Olson, Rewerts, and Washington for failure to state a claim. The Court will also dismiss Plaintiff's state-law claims against Defendants Olson, Rewerts, and Washington without prejudice. Plaintiff's Eighth Amendment claim against Defendant Bardan remains in the case.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Corrections Officer Spencer Olson, Warden Randee Rewerts, Healthcare Provider M. Barden RN, and MDOC Director Heidi Washington in their respective personal capacities. (Comp., ECF No. 1, PageID.2.)

Plaintiff alleges that on May 28, 2021, at approximately 8:36 a.m., Plaintiff got into a fight with prisoner Shumacher #599458. Plaintiff concedes that they were hitting each other with closed fists when Defendant Olson observed them. Plaintiff states that without any warning whatsoever, Defendant Olson shot him in the head with an ECD taser device, which struck Plaintiff in his right temple. Plaintiff reports that he suffered two seizures almost immediately after being "tased." Plaintiff asserts that Defendant Olson's failure to warn Plaintiff or to shoot Plaintiff in another area of his body is evidence of a lack of proper training. (*Id.* at PageID.3.)

Following the incident, Plaintiff began to experience trouble with the vision in his right eye. Plaintiff placed multiple kites to see the MDOC eye specialist, who explained that the loss of vision was related to being tased in the head. Plaintiff was prescribed eyeglasses and was discharged back to his housing unit. (*Id.* at PageID.4.) Plaintiff states that the eye specialist told him to come back for further care if his vision worsened. (*Id.* at PageID.6.)

Sometime thereafter, Plaintiff noticed that the eyeglasses were not helping the situation and that his vision was becoming worse over time. Plaintiff filed multiple kites seeking further evaluation, stating that he was now nearly blind in his right eye and needed to see the eye specialist

again to see if there was anything that could be done to preserve his vision. (*Id.*) Plaintiff states that Defendant Bardan denied his request to see the eye doctor, stating that Plaintiff had already been prescribed glasses. Defendant Bardan cancelled Plaintiff's appointment with the eye specialist. (*Id.* at PageID.5.) Plaintiff asserts that Defendant Bardan's refusal to allow Plaintiff to access medical care for his deteriorating vision robbed him of the chance to see if his condition could be prevented or reversed. (*Id.*)

Plaintiff asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments, as well as under state law. Plaintiff seeks damages.

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Rewerts and Washington

Plaintiff fails to allege that Defendants Rewerts and Washington took any action against him, other than to suggest that Defendants failed to adequately supervise or train their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any *facts* showing that Defendants Rewerts and Washington encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory assertion that they failed to ensure that Defendant Olson received proper training in the use of a taser is insufficient to demonstrate that Defendants Rewerts and Washington were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Rewerts and Washington engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

    **B.**    **Defendant Olson**

Plaintiff appears to claim that Defendant Olson used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation

on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's claim regarding Defendant Olson's use of the taser must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321–22. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley* should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins*, 559 U.S. at 37–39. Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

As noted above, Plaintiff claims that he was engaged in a fight with another prisoner when Defendant Olson observed the fight and shot Plaintiff in the head with a taser. Plaintiff asserts that Defendant Olson did not issue a warning prior to using the taser. Plaintiff also states that Defendant Olson should have aimed the taser at the lower half of his body. Plaintiff suggests that as a result of Defendant Olson's use of the taser, Plaintiff lost vision in his right eye.

As an initial matter, Plaintiff does not allege that Defendant Olson's use of the taser to break up a fight was unwarranted. Additionally, the facts alleged by Plaintiff do not support the inference that Defendant Olson intentionally hit Plaintiff in the temple with the taser. Instead, Plaintiff appears to suggest that Defendant Olson was inadequately trained in the use of a taser.

With respect to Plaintiff's assertion that Defendant Olson was inadequately trained, an officer's failure to comply with training alone—while perhaps negligent—does not state an Eighth Amendment claim. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986). Furthermore, as to Defendant Olson's use of the taser, prisons and prison officials have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). A prison official's use of a taser to maintain security and order, such as the use of a taser upon responding to a physical fight between prisoners, does not, on its own, state an Eighth Amendment claim. *See, e.g.*, *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a disruptive prisoner to restore order and discipline was not an Eighth Amendment violation); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (concluding that the use of a stun gun to subdue a noncompliant prisoner did

8

not violate the Eighth Amendment when the prisoner failed to show that the officers used it "maliciously and sadistically to cause harm" (citation omitted)); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with a strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors" (citation omitted)).

Here, viewed in the light most favorable to Plaintiff, the factual allegations in the complaint show that Defendant Olson used the taser to break up a fist fight between Plaintiff and another prisoner. Plaintiff has alleged no facts to suggest that Defendant Olson used the taser maliciously or sadistically to cause harm; instead, the facts alleged by Plaintiff appear to show that Defendant Olson used the taser in a good-faith effort to restore order and to stop a fight in between inmates. *See Hudson*, 503 U.S. at 6–7; *see also Whitley*, 475 U.S. 312. Applying the standard articulated in *Hudson*, the Court concludes that, as shown by the facts alleged by Plaintiff, some level of non-lethal force was necessary to restore order and to stop Plaintiff and the other prisoner from harming one another during a fight. *Hudson*, 503 U.S. at 6–7. It is unfortunate that Plaintiff was struck by Defendant Olson's taser in his right temple, and the Court does not minimize this; however, deploying a taser in these circumstances—with no other facts alleged to suggest that the force was used maliciously or sadistically to cause harm—does not support an inference that Defendant Olson's use of the taser constituted excessive force.

In summary, under the circumstances alleged in the complaint, Plaintiff has failed to show that Defendant Olson's use of the taser when trying to stop an ongoing fight violated contemporary

9

standards of decency. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Olson.

### C. Defendant Bardan

Plaintiff asserts that Defendant Bardan was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically

serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

11

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this case, Plaintiff asserts that Defendant Bardan completely prevented him from accessing care for the deteriorating vision in his right eye. The Court concludes that at this point in the litigation, Plaintiff adequately sets forth an Eighth Amendment claim against Defendant Bardan for deliberate indifference to Plaintiff's alleged serious medical need.

**D.     State-law claims**

Plaintiff asserts state-law "breach of fiduciary duty" and "negligent infliction of mental and emotional distress" claims against Defendant Olson, for shooting him in the head with a taser, and against Defendants Rewerts and Washington, for failing to properly train Defendant Olson. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and

13

the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendants Olson, Rewerts, and Washington fail to state a claim, his related state-law claims will be dismissed without prejudice to his ability to pursue those claims in state court.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Olson, Rewerts, and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state-law claims against Defendants Olson, Rewerts, and Washington without prejudice. Plaintiff's Eighth Amendment claim against

Defendant Bardan for deliberate indifference to Plaintiff's serious medical need remains in the case.

      An Order consistent with this Opinion will be entered.

Dated:   September 25, 2024            /s/ Jane M. Beckering
                                                          Jane M. Beckering
                                                          United States District Judge